ANNA M. CLARK *vs.* HENRY E. WOOTTON, and JOHN
S. TYSON, Claimants, &c.  ANNA M. CLARK *vs.*
KATE E. KEMP, and IDA E. KEMP, Claimants, &c.

*Husband and Wife—Husband's Debts— Wife's property—*
*Attachment—Section 43, of Article 3, of the Constitu-*
*tion—Protection of Wife's property—Sections 1 and 2,*
*of Article 45, of the Code.*

A judgment obtained by a husband and wife against a railway com-
pany, for injuries sustained by the wife, cannot be attached for a
debt due by the husband, being exempted from execution in virtue
of section 43, of Article 3, of the Constitution, which provides that
"the property of the wife shall be protected from the debts of the
husband."

A judgment obtained by a husband and wife against a railway com-
pany, for injuries sustained by the wife, is not embraced within the
provisions of sections 1 and 2, of Article 45, of the Code.

APPEALS from the Court of Common Pleas.

Charles E. Kemp and wife, obtained a judgment on the
5th of October, 1882, against the Baltimore City Passen-
ger Railway Company, for $10,000 for personal injuries to
the wife. This judgment was affirmed by this Court on
appeal, at October Term, 1883, (61 *Md.*, 74.) The appel-
lant, a judgment creditor of the husband, issued an attach-
ment on her judgment and laid it in the hands of the
Baltimore City Passenger Railway Company. Wootton
and Tyson filed a claim, as assignees of Kemp and wife,
to one-third of the fund in the hands of the garnishee,
and Kate E. Kemp and Ida E. Kemp, filed a claim to
two-thirds of the same fund as assignees. Two cases were
docketed and were tried together before the Court, with-
out the intervention of a jury. The Court decided that
the judgment was protected from the husband's debts by

8                    v. 63.

section 43, of Article 3, of the Constitution, and rendered judgment for the claimants in both cases. The plaintiff below appealed.

The causes were argued before ALVEY, C. J., ROBINSON, IRVING, RITCHIE, and BRYAN, J.

*John Prentiss Poe,* and *Arthur W. Machen,* for the appellant.

*Henry E. Wootton,* and *John S. Tyson,* for the appellees.

BRYAN, J., after stating the case, delivered the opinion of the Court.

Charles E. Kemp and wife, obtained a judgment against the Baltimore City Passenger Railway Company for bodily injuries to the wife. This judgment was attached by a creditor of the husband, and it was decided by the Court of Common Pleas that it was not attachable. The attaching creditor has appealed to this Court.

As the suit by Mr. and Mrs. Kemp, against the Railway Company, was brought before the passage of the Act of 1882, ch. 265, the rights of the parties to this controversy are not affected by that Act. By the common law it was necessary that husband and wife should join in every action brought to recover damages for personal injuries to the wife. In case the husband died before the damages were recovered, they survived to the wife; but if the wife died before the damages were recovered, the suit abated. If the husband died after the recovery of the judgment, the whole interest survived to the wife; and if the wife died, the whole interest survived to the husband. They did not hold the judgment by a divisible title; one-half to the one, and one-half to the other; but owing to the unity of the matrimonial relation, they held it as if they were one and the same person. The hus-

band, however, had the right to receive payment of it, to release it, or to dispose of it as he might see fit.   But if he died without having exercised these rights, the judgment became absolutely the property of the wife, and was not subject to the claims of his creditors.

Independently of his wife, the husband had no cause of action whatever for personal injuries to her; and in this respect his rights were different from those which he had in a certain class of *choses in action* of his wife, on which he might sue without joining her in the action.   In this last description of cases, the judgment itself in the husband's own name was regarded as a reduction into possession, and worked an extinguishment of his wife's rights.   But although a judgment, in the joint names of husband and wife, did not *proprio vigore* vest exclusively in the husband, so as to leave no interest in the wife, it was nevertheless subject to the payment of the husband's debts.   In *State vs. Krebs,* 6 *H. & J.,* 31, it was decided that a bond, which had been given to the wife for the proceeds of the sale of her real estate by commissioners, was attachable by her husband's creditors, and this liability was deduced by the Court, as a consequence following necessarily from the right of the husband to sue on the bond in his own name.   The opinion in the case further says:  "The money, being at the disposal of the husband, is in truth and in law his, and is liable for his debts, and can never be enjoyed by the wife but on the single contingency of her surviving her husband, before an appropriation is made of it by him."   This case has been followed and approved in *Peacock vs. Pembroke and Clarke,* 4 *Md.,* 280 ; *Taggart vs. Boldin and Thayer,* 10 *Md.,* 104, and many other cases.   The money due on the judgment which was attached in this case, was by the common law as much at the disposal of the husband as any property which he possessed, and, therefore, according to the test just mentioned, would be liable to the claims of his creditors.

We must now, however, inquire whether any change in the rights of the respective parties to this controversy has been effected by the constitutional and legislative enactments which have been made. The Act of 1874, chapter 57, re-enacted with a slight modification the Act of 1853, chapter 245. This latter Act is codified as the first section of Art. 45 of the Code of Public General Laws. The original Act of 1853 was merely intended to exempt the property therein embraced from liability for the husband's debts, and did not have the effect of altering or impairing the marital rights of the husband. *Schindel vs. Schindel,* 12 *Md.,* 108; *Same vs. Same,* 12 *Md.,* 313. But the second section of Art. 45 of the Code has expressly provided that the married woman should hold such property for her separate use, with power of devising the same as fully as if she were a *féme sole.* It embraces, according to the enumeration of the Act of 1874, the property, real and personal, belonging to a woman at the time of her marriage; and all property, which she may acquire or receive after her marriage by "purchase, gift, grant, devise, bequest, descent, or in a course of distribution." The right of property in this judgment was not obtained in either of these modes. There is a mode of acquiring personal property distinct from those enumerated in these Acts. *Blackstone,* in treating of the title to personal property, classifies the methods of acquiring it under twelve distinct heads; and among these, he mentions the title by judgment. And herein, as one species of property acquired by this mode, he specifies damages awarded to a party as a compensation for some injury sustained by him. He remarks that the injured party has unquestionably a vague and indeterminate right to some damages as soon as the injury is committed, and the verdict and judgment do not so properly vest a *new* title in him, as fix and ascertain the *old* one; yet, as the legal proceedings are the only visible means of this

acquisition of property, he maintains that the classification is correct. 2 *Blackstone's Commentaries*, 438. All the property acquired in the modes mentioned in the first section of Article 45 of the Code and the amendment to it, is by the second section expressly made the separate property of the married woman; but it has never yet been supposed that the husband was excluded from an interest in the damages recovered in an action for personal injuries to the wife; unless the Act of 1882 changes the law as to occurrences which have taken place since its passage. It has always been held that both husband and wife should join in the action, and that damages should be claimed in behalf of both; because both had an interest in the judgment. *Newcomer and Wife vs. Kean*, 57 *Md.*, 121. And this very suit, in which these damages were recovered against the Railway Company, is as good an illustration as can be found of the practice in this particular. We conclude that the first and second sections of Article 45 of the Code and the amendments to them do not affect any rights existing under this judgment. To avoid all ground for misapprehension, we think it proper to say that although we have referred to the Act of 1882, chapter 265, no question in this case arises under that Act, and we do not intend to give any opinion as to its construction.

It is now necessary to inquire whether the forty-third section of the third Article of the Constitution has any bearing on the questions involved in this case. It is in these words: "The property of the wife shall be protected from the debts of the husband." The previous Constitutions of 1851 and 1864 had contained directions to the Legislature to pass laws necessary to secure this protection; and these requirements had been partially fulfilled. But our present Constitution does not commit this matter to the action of the General Assembly. It adopts the language of the Act of 1853 so far as it declared the protection in question, and incorporates it into

the fundamental law of the land. There was after this constitutional enactment no longer any necessity for the functions of the General Assembly. How could a statute declaring that the property of the wife should be protected give any additional efficacy to the supreme law? The words of the section are general and comprehensive. They give protection to all of the property of the wife; there is no reason for excluding any portion of it from this immunity. The Act of 1853 did not give the wife a separate estate in the property which she had at the time of the marriage, and which she afterwards acquired in the modes therein mentioned. It did not impair the right of ownership which the husband had by the common law; but leaving this right unaffected, it exempted the property from the claims of his creditors. *Schindel vs. Schindel,* 12 *Md.,* 313; *Bridges & Woods vs. McKenna,* 14 *Md.,* 266; *Plummer and Wife vs. Jarman, et al.,* 44 *Md.,* 637; *Keller vs. Keller, et al.,* 45 *Md.,* 276. This clause of the Constitution must receive the same construction which has been given to the similar language of the Act of 1853. The interest of the wife in this judgment is co-extensive with that of the husband, subject of course to his right of defeating it at his own will. In-the eye of the law they are one person; as *Blackstone* says, the very being or legal existence of the woman is incorporated or consolidated into that of her husband. As a consequence of this union and identity, when an estate was given to a man and his wife, they did not take it by moieties, but each took the entirety; they held *per tout, et non per my.* But without dwelling on the quaint language of the books, it is more to the present purpose to say that by the common law the husband, whenever he chose, could divest all interest which his wife had in this judgment; and that, before the abovementioned clause of the Constitution became the law of the land, as a consequence of this right of the husband, his creditors could do the same thing in

Clark *vs.* Wootton, *et al.*

opposition to his wishes, by subjecting it to the payment of their debts. If they now have the power to do it, it is very clear that they can wrest from the wife a valuable interest, and appropriate it to the payment of debts due by the husband. To permit this would be to defeat that complete protection which the Constitution designed to give to married women. It intended that no property right should be taken from her for the satisfaction of her husband's debts. It is nothing to the purpose to argue that the husband has an interest in this judgment which ought to be subject to his creditors' demands. The law exempts the husband's right to this judgment from execution for the sake of the wife ; it protects him because thereby it can most efficiently protect her. · By the construction given to the Act of 1853, the husband was allowed to own, possess and enjoy the property which he had acquired by his marital rights, and nevertheless it was exempt from execution by his creditors. All this resulted from the words of the statute, that the property should be "protected from the debts of the husband and not be in any way liable for the payment thereof." The same construction must prevail here. We think that the attachment cannot be sustained. As these judgments must be affirmed, it is unnecessary to consider any question about the assignments to the appellees of certain interests in the judgment.

*Judgments affirmed.*

(Decided 27th January, 1885.)